Richardson, Ch. J.,
delivered the opinion of the court:
The facts in this case as now presented differ from those found on the former trial (27 C. Cls. R., 241) only in one particular. Finding n shows that the claimants at the time the depredations were committed were subjects of the King of Hanover, and were entitled to all the rights and privileges acquired by the treaty between the United States and the King of that country, A. D. 1847. (Treaties and Conventions between the United States and'other powers from July 4, 1776, to 1887, p. 523.)
As to the law arising upon the other facts in the case, we have but to repeat substantially what we said before.
In February, 1856, the claimants owned property which was taken and destroyed by Indians belonging to the tribe of Bogue Eiver Indians, and this action is brought to recover damages for the same under the Act of March 3, 1891 (chapter 538, 1 Supp. Rev. Stat., 2d ed., p. 913), which provides that the court shall have jurisdiction, among other cases, of—
“ First. All claims for property of citizens of the United States taken or destroyed by Indians belonging to any band, tribe, or nation in amity with the United States, without just cause or provocation on the part of the owner or agent in charge, and not returned or paid for.”
*65 The defendants resist the claim on two grounds:
First. Because the claimants, aliens by birth, were not citizens of the United States at the time the depredations were committed, though they had become such long before this action was brought. The statute confers jurisdiction on the court to inquire into and finally adjudicate “all claims for property of citizens of the United States taken or destroyed by Indians,” etc., without declaring specifically whether the claimants must have been citizens at the time of the commission of the depredations, or such only when the act was passed or when their suits are brought.
It is evident that the whole paragraph relates to but one period of time, and that period was when the depredations were committed. It never has been questioned, and nobody can doubt, that it is the amity of the band, tribe, or nation at that time which must be proved.
The words “citizens of the United States” and “Indians belonging to any band, tribe, or nation* in amity with the United States” are so closely connected in the same paragraph, that they must refer to the same time. ■ The status of the Indians as to amity and of the persons whose property was taken or destroyed as to citizenship both or neither must be determined as of the time the depredation took place. Their rights and liabilities were fixed at that date, and could not be changed by their future acts. Hostile Indians were not to be made liable for past depredations by subsequently becoming in amity, nor were aliens to acquire new rights by subsequently becoming citizens.
If there be doubt or ambiguity on this point, much light is thrown upon it by the intention of .Congress, made apparent from the course of legislation and the practice of the Interior Department in connection therewith.
Before 1885 every Indian depredation act provided for indemnity for property destroyed by Indians to any “citizen or inhabitant” of the United States. (Act of 1796, May 19, ch. 30, sec. 14, 1 Stat. L., 472; Act of 1799, March 3, ch. 46, sec. 14, 1 Stat. L., 747; Act of 1802, March 30, ch. 13, sec. 14, 2 Stat. L., 143; Act of 1834, June 30, ch. 161, sec. 17, 4 Stat. L., 731; Rev. Stat., sec. 2156.)
The Act of 1885, March 3 (ch. 341), referred to in the Act of 1891, March 3 (ch. 538), set out in 1 Supp. to Rev. Stat., *66 2d ed., p. 913, note), provided for tbe continuation of tbe examination, allowance, and approval of Indian depredation claims on bebalf of “citizens of tbe United States,” omitting tbe words “or inhabitants, ” used in former acts.
This was regarded by tbe Interior Department as significant of tbe intention of Congress to limit allowances in sucb cases to citizens of tbe United States at tbe time tbe depredations were committed, and it bas ever since been tbe practice of tbe Department to find, in allowed cases, that tbe claimants were citizens of the United States at tbe time of tbe commission of tbe depredations.
Tbe Jurisdictional Act of 1891, March 3 (ch. 538), which we are now considering, adopted the language of tbe act of 1885, to which it refers, and in our opinion Congress intended to use therein tbe words “ citizens of tbe United States” in tbe sense that bad been given by tbe Interior Department to tbe same words-in. tbe act of 1885 for tbe past six years, which it must be presumed- was known to Congress. In this we do but adopt and follow tbe ruling of tbe Interior Department under said act of 1885, tbe general policy of which, except as to jurisdiction, Congress seems to have intended to continue.
The-claimants contend that, if that interpretation be correct, they, or tbe survivor, who brings this action, having duly made tbe primary declaration to become citizens before tbe depredations were committed, were in law citizens for tbe purposes of tbe act. Tbe authorities are against them on this point, and we can not adopt tlieir construction.. (Richards v. McDaniel, 2 Nott & McCord, 361, and 1 McCord, 187; In re Desty, 8 Abb. N. C. (N. Y.), 250; In re An Alien, 1 Hill, 141; Dryden v. Swinburne, 20 W. Va., 89; Long v. Randall, 4 Dill., 425.)
Tbe same interpretation bas been followed by tbe Executive in treaties and public documents.
Tbe claimants further contend that if they were not citizens they were subjects of tbe King of Hanover, between whom and tbe United States there existed a treaty, which contained tbe following provisions:
“ They [tbe citizens or subjects of sucb party] shall have free access to the tribunals of justice in their litigious affairs on tbe same terms ivhich are granted by tbe law and usages of tbe country to native citizens or subjects, for which purpose they may employ in defense of their rights sucb advocates, attorneys, and other agents as they may judge proper (p. 527).”
*67 This treaty was made in 1847, many years before the Court of Claims was established and before the United States had consented to be sued in any court. The organic act provided under what circumstances aliens might sue in the Court of Claims. (Act of 1868, July 27 (ch. 276, sec. 2, 15 Stat. L., 243, now Rev. Stat., sec. 1068.)
In our opinion such a treaty provision in the treaties with numerous countries does not prevent the United States from giving special rights of action to its own citizens in particular cases to the exclusion of some or all aliens. It applies only to ‘‘litigious affairs” of aliens with each other and with citizens, given by the law and usage of the country to its native citizens or subjects in ordinary cases.
Moreover, the statute upon which this action is founded was passed more than forty years after the treaty with Hanover was promulgated, and the Supreme Court has decided that when there is a conflict between the provisions of a treaty and those of a statute the latest in date must govern. (The Cherokee Tobacco Case, 11 Wall., 516.)
Second. Another defense against the claim is that the tribe or band of Bogue Biver Indians was not in amity with the United States at the time the property was taken and destroyed; amity being a condition precedent to the right of recovery. The tribe was in armed hostility and war, making a general onslaught on the settlers and destroying their property.. In this warfare the whole tribe was engaged.
Tribes, bands, or nations who raid on their neighbors, wage war upon them, and commit depredations can not be held to be in amity with the country whose citizens are thus injured.
The tribe was in treaty relations with the United States at the same time (10 Stat. L., 1018, 1119), but this warfare and these hostilities prove conclusively that the tribe was not in amity with the United States within the meaning of the word as defined by this court in the case of Samuel Marks amd Hyman Wollenberg v. The United States and the Bannock Indians (28 C. Cls. R., 147), and so far as it is a question of fact the court has found the fact so to be.
A treaty is some evidence of amity, to be considered with other facts and circumstances, but is not conclusive. It is at most but prima facie evidence.
Besides, war supersedes treaties of peace and friendship and *68 makes the subjects of contending sovereignties enemies in law. Such, sovereignties and their subjects can not be regarded as in amity with each other, notwithstanding previous agreements.
The jurisdictional act, as we interpret it, is in accord with the general policy of the Government and of all governments, not to pay for property destroyed in war. (See Act of 1887, March 3, ch. 359, § 1, first proviso, 1 Supp. Rev. Stat., 2d ed., p. 559), and Loranger’s Case; opinion of Court of Claims, by Judge Blackford, A. D. 1857 (35th Congress, first session, Rep. C. C. R., No. 96).
The conclusion of the court is that the claimant has no cause of action, and his petition must be dismissed.