## ROUSSEAU v. PECK et al.

### (Circuit Court of Appeals, Second Circuit. January 7, 1897.)

PATENTS—ANTICIPATION AND INFRINGEMENT—ELECTRIC CIRCUIT BREAKERS.

The Rousseau patent, No. 279,107, for an automatic electric circuit opener or "cut-off," used chiefly in connection with lighting gas jets, *held* to be for an improvement of a secondary character; and the first claim thereof construed, and *held* that the form of the complainant's apparatus which was alleged to have been infringed, had been anticipated. 66 Fed. 759, affirmed.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

This was a suit in equity by David Rousseau against John B. Peck and Sarah E. Ostrander for alleged infringement of an automatic electric circuit opener. The circuit court dismissed the bill, holding that the claims of the patent were not infringed, and were apparently invalid. 66 Fed. 759. The complainant has appealed.

Richard N. Dyer, for appellant.

Edward P. Payson and Edwin H. Brown, for appellees.

Before LACOMBE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. This appeal is from a decree of the circuit court for the Eastern district of New York, which dismissed a bill in equity founded upon the alleged infringement by the defendants of claims 1 and 2 of letters patent No. 279,107, dated June 5, 1883, and issued to David Rousseau, for an automatic circuit opener or "cut-off." At the hearing before this court upon the appeal, the appellant withdrew from consideration the questions relative to claim 2.

The improvement which is shown in the patent was intended to be chiefly used in connection with systems for lighting gas by electricity. In these systems the circuit is ordinarily open until it is closed to perform each operation, but sometimes it becomes permanently closed, when the battery loses its power, is exhausted, and the apparatus is inoperative. The invention was intended to be an improvement upon the kind of circuit breaker shown in the device,

78 F.—8

known in the record and in the art of circuit breaking as the "Gibson Cut-Off," which is used by the Holmes Burglar-Alarm Company, and in which, if an abnormal closure of the circuit occurs, it remains closed until the clockwork which operates the circuit breaker has run down. The specification says that the improvement was for the purpose of preventing the result which follows from too long a closure, and of "automatically breaking the circuit whenever it becomes closed longer than is necessary to operate any of the usual devices in circuit." The improvement is described in the last clause of claim 1, which is as follows:

"The combination, with an electric generator and an electric circuit emanating therefrom, of an electro-motive device which is vitalized by the closing of said circuit, automatic time mechanism which is started into operation by said electro-motive device when so vitalized, and an automatic circuit breaker which is operated by said time mechanism to permanently break said circuit at the expiration of a predetermined time after the closing of the same, substantially as set forth."

It will be perceived that the first four elements of the claim are of a well-known character, and that the fifth element is the one of novelty. The meaning of this clause of the claim is that the time mechanism is to cause the circuit breaker to break the abnormally closed circuit when the motor has run, and not until it has run, a time after the closing of the circuit, which time was established or arranged beforehand. The distinctive character of the Rousseau machine which differentiates it from the Gibson cut-off is that, "after the normal closing of the circuit in lighting the gas, the parts which tend towards the permanent opening of the circuit return to their original position." In other words, "if the time mechanism does not run for the predetermined period, the circuit breaker will be restored to the starting point." The claim does not, in terms, describe this operation. It says that the time after the closure of the circuit is predetermined, and the uniformity and equality of the predetermined periods are found in the claim, if at all, because the description of the mechanism shows that in fact the intervals of time become uniform and equal.

The defenses against the validity of the claim are many, and of a serious character. Judge Wheeler was of opinion that the claim was faulty because it did not include or describe this distinctive improvement, viz.: "The restoration or readjustment of the circuit-breaking mechanism after each normal closure of the circuit, and before the time mechanism had run the predetermined period"; secondly, because it was functional; and, thirdly, that, if the claim was for the mechanism of the specification, it had not been infringed. The defendants also insisted that the mechanism of the claim had been anticipated by devices alleged to have been pre-existing. A discussion of all the questions in the case would require an expenditure of a good deal of time upon a claim which is, at the best, of very little value. We shall therefore advert to one clearly-sustained defense, which is that the form of the complainant's circuit-breaking apparatus which was alleged to have been infringed had been anticipated.

It is to be premised that the patented improvement was of a secondary character; that there are different combinations of bars and springs, and other co-operating parts, which can be operated by clockwork so as to permanently break the circuit; that claim 1 is dangerously near being a claim for a mode of operation, and, if saved, it is saved by the words "substantially as set forth," which serve to limit the claim to the described mechanism (Seymour v. Osborne, 11 Wall. 516; Curt. Pat. [4th Ed.] 281); and that when construed by reference to the Sawyer patent, which will be hereafter mentioned, it is a secondary improvement of a narrow character. The bill in equity in this case was originally founded upon the alleged infringement of the Rousseau patent, and letters patent to William H. Sawyer, No. 279,023, dated June 5, 1883, and letters patent to Jacob P. Tirrell, No. 283,303, dated August 14, 1883. The complainant's expert, upon his prima facie case, testified that each of these patents claimed broadly an automatic circuit-opening device adapted to permanently break an electrical circuit only after the circuit had been closed a predetermined length of time, and, furthermore, testified, without objection, that the application for the Sawyer patent was filed before the application for the other patents, as appeared from the dates upon them, and that, therefore, the Sawyer patent was entitled to the broadest claim. Cross-examination of the witness showed that the claims of the Sawyer patent required that an element of the combination should have a characteristic which did not exist in the defendants' machine, and, furthermore, that the mechanism of Fig. 4 of the drawings of the Sawyer patent, which was described in the specification, but was not included in the claims, anticipated the form of the mechanism described in the Rousseau patent, which was alleged to have been infringed by the defendants. It was therefore necessary for the complainant not only to abandon the Sawyer patent as a patent which had been infringed, but to show that the Rousseau patent was its senior, and therefore had not been anticipated. When the complainant began his testimony in rebuttal, his counsel gave notice that, for the purposes of the suit, he abandoned the Sawyer and the Tirrell patents, and would rest his case upon the Rousseau patent, and thereupon introduced the testimony of Rousseau and Huck, one of his workmen, to show that he invented the mechanism in April or May, 1879. His application was filed April 29, 1881, and Sawyer's application was filed September 28, 1880. The testimony of Rousseau and Huck does not show, with strength, the creation of the Rousseau structure, as a completed thing for use, in 1879; but its strength, whatever it would have been, was destroyed by Rousseau's sworn preliminary statements to the commissioner of patents in the matter of the interference between his and Sawyer's applications. Mr. Brevoort testified for the complainant that the Rousseau cut-off of 1879 contained the inventions as patented in the first and second claims of the patent in suit; but Rousseau, when he made his statements, dated November 4 and November 16, 1881, in regard to the date of the invention, omitted all mention of his machine of 1879, and said that in August or September, 1878, he made drawings of a device in connection with electric gas-lighting

circuits, on the principle shown in his application, and that in March, 1880, he made a working drawing and a working instrument embodying the invention in question. If he had made a working instrument in the spring of 1879, he must have recollected, and it would seem that he would have stated, a fact which had so important a bearing upon the date of his invention. The attempt to answer this inconsistency by saying that the machine of 1879 did not contain a coil for generating a spark for the lighting of gas is without force. He took an assignment of the Sawyer invention for certain states on February 15, 1882, before the patent was issued, and his present title is by virtue of that assignment. Rousseau thus took the burden of proof of showing that his invention anticipated the invention described in Sawyer's patent, which he had put into the case, and which was prima facie an anticipation of his own patent. This burden of proof he has not sustained, and the question of priority remains as it did upon the testimony offered by the complainant's expert.

The Rousseau specification shows three forms of apparatus, which are described in general, but apparently correct, terms, as follows, in the defendants' brief:

"The principal form of the specification is composed of the magnet, B, which releases a detent, I, allowing a clock motor to work, which starts a second clockwork motor, which turns an eccentric, thereby elevating a shaft so as to change the circuit and shift the current into a second magnet, o, out of action, until the circuit is thus changed, which, on being energized, attracts its armature, thereby releasing an annunciator drop, which, in falling, ruptures the circuit.

"The patent, in a few lines (12–23, p. 3), suggests magnet, B, with one clockwork motor, and the tongues, 2, 3, instead of the entire apparatus, the clock then operating to remove the support of one tongue until it can drop away from the other. It also briefly suggests, as a third form, the magnet, B, and the two clockworks, with the tongues, 4, 5, the second clockwork lifting one tongue away from the other."

The second form, with one clockwork motor, and the tongues, 2 and 3, is the one which the defendants are said to use. The complainant's expert, upon being asked to point out wherein the combination of Fig. 4 of the Sawyer patent differed from the combination disclosed in claim 1 of the Rousseau patent, replied that he found that the elements were the same, but that there was a specific difference in the automatic circuit breakers, in that "the automatic circuit breaker in the Rousseau patent is brought into operation upon energizing the magnet, o, while that in Fig. 4 of the Sawyer apparatus is brought into operation by clock mechanism." Magnet, o, is not used in the second form of the Rousseau invention, and its circuit breaker is brought into operation by clockwork. A similar identity between Fig. 4 and claim 1 was subsequently stated by the same witness. The decree of the circuit court is affirmed, with costs.