# U. S. CIRCUIT COURT

JOHN CHRISTMAN and P. ELMENDORF SLOAN agt. JOHN· A.
RUMSEY and MOSES RUMSEY.

*Patent — Driven wells — Grounds for a reissue of a patent — what is not new
matter within the meaning of the statute — Though one claim is invalid it
does not prevent a recovery on the other.*

Where the petition for a reissue of a patent sets forth that by reason of
an insufficient or defective specification the original patent is inopera-
tive or invalid, and that such error arose from inadvertence, accident
or mistake, and without any fraudulent or deceptive intention:

*Held*, that this is a ground of reissue set forth in section 53 of the act of
July 8, 1870 (16 *U. S. Stat. at Large*, 205), and the decision as to the
fact set forth belongs exclusively to the commissioners of patents, and
his action conclusively establishes that fact.

Where it was urged that the original specification stated the invention to
be "a new and improved pump filter," while the reissue specification
states the invention to be "an improvement in pump filters;" it being
also contended that the original claims the whole and nothing else,
while the reissue makes two claims, neither of which claims the whole
or includes the collar or head-piece "B," and that the first two sentences
above cited in the reissued specification are new matter in violation of
section 53 of the act of 1870:

*Held*, that these two sentences cannot properly be called "new matter"
within the meaning of the statute. They do not at all relate to the
description or operation of the apparatus of the patentee.

*Held*, further, that the difficulties stated to have existed in prior pointed
pump tubes may well have been known to the patentee from hearsay,
although the first driven well point he may have seen was his own. As
the patentee's pump tube is a pointed pump tube, and as it does over-
come such difficulties in clogging in such a tube, the presumption is
that it was made to overcome such difficulties, and, therefore, that such
difficulties had been heard of by the patentee.

It is further urged that the original specification describes the invention
as applicable to all pump filters, whether used upon points for driven
wells or upon well tubes used in open wells or cisterns or streams, while
the reissued specification introduces new matter by confining the inven-
tion to driven wells only. It is contended that in this there is a violation
not only of the provisions of section 53 of the act of 1870 in regard to

Christman agt. Rumsey.

new matter, but a violation of the provision of that section, that in case of a machine patent neither the model nor the drawings shall be amended, except each by the other:

*Held,* that as the same idea is found in the original specification and drawing, taken together, there is no new matter in the reissued specification or in the reissued drawing.

Where the claim of the original patent was this: A pump filter composed of the parts A, B and C, substantially as and for the purposes described, it is urged that such claim included the three distinct parts, A, B and C, in combination, embracing the whole of the structure described; that there is no suggestion in the original specification that the patentee had invented any combination or parts less than the whole, and that each of the claims of the reissue is for a combination of parts less than the whole, and is, therefore, void:

*Held,* that, under the decision in the *Corn Planter Patent* (23 *Wallace,* 181), the reissue in the present case cannot be held to be void. The drawings of the original and the reissue being the same, and the two specifications describing the same mechanical structure, with the same mode of operation, it must be held to be lawful to reissue the patent with claims to combinations of fewer elements than were contained in the combination claimed in the claim of the original patent. The original claimed a general and larger combination, and the reissue claims subcombinations which enter into such general and larger combinations. Such a reissue is sustainable on the ground that the reissue was for things contained within the apparatus described in the original patent.

*Held,* further, that it is of no importance that the wire gauze " C," may not, by itself, have been new; or that the open grating or ground "A," may not, by itself, have been new; or that any other ingredient of the combination claimed in the reissue may not, by itself, have been new so long as the combinations, as claimed, were new.

That the two claims of the reissue do not claim combinations, but claim merely aggregations of parts, is not regarded as a tenable objection. The object of the combination claimed in the first claim is to enable the structure to be driven into the earth, and these serve for a pump and a filter without being injured in driving. Nothing less than a combination of all the elements in such combination will accomplish all the objects which such combination will accomplish. So, too, the grating and the wire gauze of the second claim act in combination in controlling the passage of the water from the outside of the grating to the interior of the wire gauze.

*Held,* also, that although the second claim is invalid for want of novelty, the plaintiff can recover on the first claim under section 60 of the act of July 8, 1870 (16 *U. S. Stat. at Large,* 207; *now section 4922 of the Revised Statutes*), although no disclaimer has been made as yet to

the second claim, provided that, prior to the entry herein as to such first claim, they make a disclaimer under section 4917 of the Revised Statutes, as to the second claim, it not appearing that there has been heretofore any unreasonable neglect or delay to enter such disclaimer; but as such disclaimer was not entered before the commencement of this suit, the plaintiffs will not be entitled to recover any costs of this suit.

*Northern District of New York, September,* 1879.

*J. J. Greenough* and *Irving G. Vann,* for the plaintiffs.

*David Wright,* for the defendants.

BLATCHFORD J.— This suit is brought on reissued letters patent, granted to John Christman, March 24, 1874, for an " improvement in pump filters." The specification says : " In pointed pump tubes heretofore essayed, difficulties have arisen in keeping them free from clogging and rendering them efficient. My invention was made to overcome these difficulties, in which I have fully succeeded. The construction of my apparatus is substantially as follows, referring to the accompanying drawing, which is a side elevation of the filtering point made for driving, affixed to the lower end of a pump tube with the side grating " A " broken, to show the wire gauze " C." I form an open grating " A," of rods of proper sized wire of a convenient length and form the upper ends of which are permanently affixed to a collar or head-piece " B " on which a screw may be cut, to affix it to the lower end of the pump tube " D. " This screw may be cut on the inside, as shown by the drawing, or on the outside, as preferred, the joint being made in any well known way. The open grate " A " extends down cylindrically in the drawing a sufficient distance, and is thence tapered and brought into a solid point " A " as in the drawing; or it may be made rounded or square, so there is a solid, compact end adapted to the purposes intended. Inside the grating " A " I insert another tube " C," made of wire gauze, and covering the

spaces between the bars of the grate "A" and properly fastened in place which, I find, makes, in connection with the strong supporting grating, a perfect filter, to be used at the bottom of pump tubes; where it is required, as in quicksands, &c., there may be a filtering medium put inside the wire gauze, to resist the outside pressure, but for ordinary cases no such packing is necessary." The claims of the reissue are as follows:

"1. The combination of a wire gauze "C" with an open grating or guard "A" of sufficient strength for the purpose required, and a point "A" constructed substantially as and for the purposes described. 2. The combination of a grating "A" having apertures through it for the passage of the water to the interior forming the lower end of a pump tube, with a wire gauze "C" for filtering the water, substantially as described."

The original letters patent were granted to John Christman, November 28, 1865, for an "improvement in pump filters."

The specification of the original says: "Be it known that I, John Christman, of the city of Syracuse, N. Y., have invented a new and improved filter, and I do hereby declare that the following is a full, clear and exact description of the construction of the same and the form thereof, when complete, reference being had to the annexed drawings making a part of this specification. The letters used represent the same parts wherever they occur. To enable others skilled in the art to make and use my invention, I will proceed to describe the construction of the filter and its form when complete and ready for use. I use any kind of common wire and arrange sections thereof in a tubular form "A" so that the longitudinal sections a, a, a, a, &c., will form an open grate. The ends of the wire sections designed for the lower end of the filter are welded together in a compact form, which may be round, pointed, or square across. The ends of the wire sections designed for the upper part of the filter are made to pass between two shoulders b to the inner one,

and *c* the outer one, forming a part of the round head-piece " B " thus keeping them in a circular or. tubular form, and, to hold the same firmly, the outer shoulder, *c*, may be soldered down upon the wire sections, and the same thus held securely in their places. The head-piece will be of sufficient length so that the upper end thereof may receive the cut of a screw, either on the inside or the outside, as may be desirable, as seen at *d*, to receive the pump tube " D." Fitting the inside of the wire tube thus formed I insert another tube " C " made of common wire gauze, and the two thus formed make a strong and perfect filter to be used at the bottom of pump tubes. The tube of wire gauze may, in case there is quick-sand, be packed with charcoal or other filtering substances, but, for ordinary use, no such packing would be necessary." The claim of the orignal patent was this : " A pump filter composed of the parts A, B and C substantially as and for the purposes described."

It is contended for the defendants that the reissue is void. The petition for the reissue sets forth that, by reason of an insufficient or defective specification, the original patent is inoperative or invalid, and that such error arose from inadvertence, accident or mistake, and without any fraudulent or deceptive intention. This is a ground of reissue set forth in section 53 of the act of July 8, 1870 (16 *U. S. Stat. at Large*, 205). The decision as to the fact so set forth belonged exclusively to the commissioner of patents, and his action conclusively established that fact (*Seymour* agt. *Osborne*, 11 *Wall.*, 516, 543 – 545 ; *Herring* agt. *Nelson*, 14 *Blatch. C. C. R.*, 293).

It is further contended that new matter has been introduced into the specification of the reissue, in violation of section 53 of the act of 1870. It is urged that the original specification states the invention to be " a new and improved pump filter," while the reissue specification states the invention to be " an improvement in pump filters ; " that the original claims the whole and nothing else, while the reissue makes two

claims, neither of which claims the whole, or includes the collar or head-piece "B;" and that the first two sentences above cited, in the reissued specification, are new matter.

These two sentences cannot properly be called "new matter" within the meaning of the statute. They do not at all relate to the description or operation of the apparatus of the patentee.

The difficulties stated to have existed in prior pointed pump tubes, may well have been known to the patentee from hearsay; although the first driven well point he may have seen was his own. Certainly, as the patentee's pump tube is a pointed pump tube, and as it does overcome the difficulties in clogging, in such a tube, the presumption is, that it was made to overcome such difficulties, and, therefore, that such difficulties had been heard of by the patentee.

It is further urged that the original specification describes the invention as applicable to all pump filters, whether used upon points for driven wells or upon well tubes used in open wells, or cisterns or streams, while the reissued specification introduces new matters by confining the invention to driven wells only. This is claimed to be shown by the fact that the original states that "the ends of the wire sections designed for the lower part of the filter are welded together in a compact form, which may be round, pointed or square across," in the reissue it is stated that the open grating "A," is formed of rods of proper sized wire of a convenient length and form, the upper ends of which are permanently affixed to a collar or a head-piece "B," and that the open grate extends down cylindrically a sufficient distance, and is thence tapered and brought into a solid point, "A.'" The original states that sections of wire are arranged in a tubular form, "A," so that the longitudinal section form an open grate. It is contended that as there is no "A'" in the original drawing, and as "A," in that drawing, includes the whole of the open grate, from the welded point to the head-piece "B," and as, in the reissue drawing, the cylindrical part is lettered "A," and the tapered

part is lettered "A,'" the restriction in the reissue of the grating "A" to the cylindrical part above the taper, and the lettering "A'" in the reissue drawing, are new matter not warranted by the original drawing or model. It is contended that in this, there is a violation, not only of the provisions of section 53 of the act of 1870, in regard to new matter, but a violation of the provision of that section, that, in case of a machine patent neither the model nor the drawings shall be amended, except each by the other; that a new division or element is made in the drawing, called "A';" that the drawing has been amended by dividing the grating into two parts, without any warrant therefor from the model; and that this was a material change, because it was intended to change the original hollow point as described in the original specification, and as shown in the original drawing and by the model, into a solid point, including all of the tapering part as solid matter.

There is no substantial difference between the drawing attached to the original patent and that attached to the reissued patent. The form of the whole structure, as a whole, is the same in each. The forms of the several parts are the same in each. In each of the protecting grating is cylindrical above and then tapers below, in the form of an inverted cone, to a point. In the original drawing the whole grating, from the head-piece to the point, is lettered "A'." In the reissue drawing the cylindrical part of the grating is lettered "A," and the tapering part is lettered "A'." It is not perceived that there is any force in these objections taken by the defendants. The drawing of the original patent shows a pointed pump tube capable of being driven to make a driven well. The original specification says: "The ends of the wire sections designed for the lower part of the filter are welded together in a compact form which may be round, pointed or square across." There is nothing in this language, properly construed, which indicates that the patentee contemplated the use of the structure in any other well than a driven well. It speaks of the "wire sections designed for the lower part

of the filter." The "lower part of the filter" is the part from where the taper begins downward. The ends of these wire sections, that is, their lower ends are welded together in a compact form. Why, in a compact form? Evidently, to get a driving point. Unless the ends were compact, in the sense of being compacted to a point, there could be no driving. There is no suggestion that the lower ends are to be rounded or square across. If they were they could not be driven. The words " which may be round, pointed or square across" refer to something which may, at the same place, be, optionally, either round, pointed or square across. It is not the " ends " which are to be round, pointed or square across, it is the " lower part of the filter" which is to be "round, pointed or square across."

The lower part of the filter is the part from where the taper begins downward. Such part may not have its up and down outside line from the lower end of the cylindrical part downward to the end, the line of a cone, as in the drawing ; but such outside line may be rounded and more bulging than the line of a cone, so it be not of greater diameter than the cylindrical part, provided, the lower ends, the wires are welded together in a compact form ; or such part be pointed, that is, its outside line may be the line of a cone, going in a straight line from the lower end of the cylindrical part to the point ; or such point may be square across, that is, it may be an inverted pyramid with its cross-section anywhere a square, provided the lower ends of the wires in the four sides are welded together in a compact form. This is the only reasonable meaning of the words. They are inartificially put together, but in the reissue the language is : " The open grate A', extending down cylindrically in the drawing a sufficient distance, and is then tapered and brought into a solid point A', as in the drawing, or it may be made rounded or square so there is a solid compact end adapted to the purposes intended." In the drawing the open grate "A" does extend down cylindrically for a distance and it is then tapered, that

is, the open grate continues in the tapered part. The tapered part is not, all of it, solid. After that part of the tapered part, which is an open grate, comes the solid driving point into which the tapered open grate is brought. The letter A in the drawing of the reissue is not at or near the solid point. It is opposite open grating on the tapered part. The statement that the open grate, after leaving the cylindrical form, "is then tapered and brought into a solid point A' as in the drawing," does not mean that A' is the solid point, or that the solid point is A,' or that the whole of the tapered part is solid. It means that the part below the cylindrical part is A'; that it is tapered as it goes down; that it is brought at its lower end into a solid point, and that the whole part which is thus tapered and brought into a solid point is designated as A' in the drawing. The statement further is, that the part which is tapered, that is, conical, or, as in the original, pointed, may alternately be made rounded or square, or, as in the original, round or square across, in the senses before explained. There is a proviso, that in each one of the three cases there must be a solid, compact end adapted to the purposes intended, that is, for a pointed pump tube made for driving.

This same idea is found in the original specification and drawing, taken together. There is no new matter, in this regard, in the reissued specification, or in the reissued drawing, nor is the added lettering "A'" new matter. It is not perceived that any intention is disclosed, in the reissue, to make the whole of the tapering part solid. It is further contended that the reissue is not for the same invention, or for any invention described in the original specification as the invention of the patentee. The cases of *Gill* agt. *Wells* (22 *Wallace*, 1), and *Russell* agt. *Dodge* (3 *Otto*, 460), are relied on as authorities. The claim of the original patent was this: A pump filter, composed of the parts A, B and C, substantially as and for the purposes described." It is urged that such claim included the three distinct parts A, B and C, in

combination embracing the whole of the structure described; that there is no suggestion in the original specification, that the patentee had invented any combination of parts less than the whole; and that each of the claims of the reissue is for a combination of parts less than the whole, and is, therefore, void. The view taken by this court in *Herring* agt. *Nelson* (before cited), of the decisions in *Gill* agt. *Wells*, and *Russell* agt. *Dodge*, seems to me to be a sound one. Under the decision in the *Corn Planter Patent* (23 *Wallace*, 181), which was subsequent to that in *Gill* agt. *Wells*, the reissue in the present case cannot be held to be void. The drawings of the original and the reissue being the same, and the two specifications describing the same mechanical structure, with the same mode of operation, it must be held to be lawful to reissue the patent with claims to combinations of fewer elements than were contained in the combination claimed in the claim of the original patent. The original claimed a general and larger combination, and the reissue claims subcombinations which enter into such general and large combinations. Such a reissue was sustained in the *Corn Planter Patent*, on the ground that the reissue was for things contained within the apparatus described in the original patent, and against the effort to control the case by the decision in *Gill* agt. *Wells*.

It is of no importance that the wire gauze " C," may not, by itself, have been new, or that the open grating or ground " A " may not, by itself, have been new, or that any other ingredient of the combinations claimed in the reissue may not, by itself, have been new so long as the combinations, as claimed, were new.

As stated before A', in the drawing of the reissue and in the text of the reissued specification, does not mean the solid point alone, by itself, but includes the whole of the tapering point, which tapering point is an open grate from the lower end of the cylindrical part of the open grate down to where the solid compact end begins, and the solid compact end forms the rest of the tapering part and the rest of A'. The

reissued specification says that the open grate is tapered from where its cylindrical part stops, that is, that the open grate continues into the tapered part down to where the solid compact end begins. The drawing shows that. So, where the first claim of the reissue speaks of " a point A'," it means the whole of what is lettered " A', " the whole of what is so tapered from the lower end of the cylindrical part to the lower end of the solid compact end, and it does not mean merely the solid compact end.

It is further contended that the two claims of the reissue do not claim combinations but claim merely aggregations of parts. The object of the combination claimed in the first claim is to enable the structure to be driven into the earth, and these serve for a pump and a filter without being injured in driving. Nothing less than a combination of all the elements in such combination will accomplish all the objects which such combination will accomplish. So, too, the grating and the wire gauze of the second claim act in combination in controlling the passage of the water from the outside of the grating to the interior of the wire gauze. The objection is not regarded as tenable.

The application for Christman's original patent was filed in the patent office, August 1, 1865. The invention was made by him in the spring of 1864. The model sent by him to the patent office was made in the spring of 1865.

The patent to Phelps and Holten, of June 12, 1855, for a "metallic medium for filtering," describes the use, for filtering water, of several thicknesses of fine wire gauze prepared by passing it through metallic roles under a sufficient pressure to flatten the wire and reduce the interstices. There is no suggestion of a driven well or of a protecting grating or of any necessity for such grating.

The patent to DeBuffon, of April 14, 1857, for an " improved apparatus for filtering liquids," describes a structure consisting of an internal metal tube perforated with holes, through which the filtered water passes, and surrounded on the out-

side by a wire gauze cylinder, the space between the two cylinders being filled with permeable materials.   There is no suggestion of a driven well.

The patent to May, of August 1, 1865, is subsequent in date to Christman's invention.

Hewitt's deep well pump, used in 1858, 1859 and 1860, was a perforated basket attachment, with wire gauze wound round its outside, as a water strainer.   It could not be taken down by the driving of a well point.   The apparatus of Hughes was a perforated pipe with a screen of wire gauze round it, and was not for driving.   The apparatus of Suggett was a single tube for driving with a point, and with perforations in the tube above the top of the point.

In the defendants' apparatus there is a perforated tube, surrounded on the outside by two thicknesses of finely perforated copper, and a covering of perforated metal outside of the perforated copper.   Below this is a solid well point for driving, this solid point is enlarged near its upper part so as to be larger in diameter than the pipe above, and thus afford additional protection to the finely perforated copper.   The defendants allege that their structure does not infringe the claims of Christman's reissue ; they insist that their perforated tube and driving well point are like those used by Suggett before Christman's invention, and that their finely perforated copper, if substantially wire gauze, is the wire gauze of Phelps and Holten, and of DeBuffon, and of Hewitt, and of Hughes ; that they use no wires, and have no wire grating and no head-piece ; that their driving point is solid from where the tapering begins and all open ; that the plaintiff's structure cannot have its tapering part enlarged at its upper part ; and that it required no invention to cover the perforated part of Suggett's apparatus with wire gauze or finely perforated copper sheets.

The defendants' apparatus can be driven and then remain as a pump bottom and a filter.   The filter in it is substantially wire gauze, and such filter is protected in driving by the

perforated outside metal.   The enlargement of the top of the
point may be an added protection, but the office of the metal
pipe outside of the finely perforated copper is to protect the
latter while the structure is being driven and afterwards.
Such outside perforated metal pipe while it protects the cop-
per inside of it permits the water to freely pass inwardly
through it, and it is, substantially, an open grating.   The
combination found in the first claim of the plaintiffs' reissue,
is substantially found in the defendants' structure.   The
defendants have substantially a wire gauze filter with a pro-
tection grating, or guard outside of it, of sufficient strength
for the purpose required and a tapering driving point.   The
perforated tube inside of the copper is an addition which does
not destroy the combination of the copper with the protection
guard outside of it.

The plaintiffs' tapering part may have a less part of it solid
than the defendants' tapering part, but all that is necessary is to
have enough of it solid, or compact, beginning at the lowest
point, to enable it to be driven according to the nature of the soil.
It is in evidence that structures like that described and shown
in the specifications and drawings of Christman's original and
reissued patents were driven by him in 1865, and have worked
successfully ever since.   If the solid point for driving is sus-
tained by a rigid metallic tubular grating that connects it with
the pumb-tube above, that is all that is essential.   Whether
this connection be by a head-piece or collar where the open
grating is of wires, or whether the head-piece is omitted
because unnecessary, where the grating is of inflexible metal,
is not of the essence of Christman's invention.   In either case
the structure is equally carried by the driving of the tube, so
as to arrive at its resting place in a condition to act perfectly
as a filter.   It therefore appears that the combination covered
by the first claim of the plaintiffs' reissued patent is found in
the defendants' structure.   It also appears that such combi-
nation is not found in any of the prior structures adduced by
the defendants, and that it involved the exercise of invention

to arrive at such combination, in view of everything that previously existed.

The combination covered by the second claim of the plaintiffs' reissue seems to be a combination of the grating above the tapering point, with the wire gauze inside of such grating, excluding the tapering part and the driving point, and to have no exclusive relation to a driven well, though capable of use in it. Aside from driving, the combination of the grating and the wire gauze, as a filter, is the same thing as a combination, whether the wire gauze is inside of the grating or outside of it, so long as the apparatus is at the lower end of a pump-tube. In this view Hewitt and Hughes anticipated Christman as to such second claim, and it is invalid, provided the testimony is available to the defendants. Hughes, Hewitt, Field and McCue testify to substantially the same prior arrangement. None of them are named in the answer. Although the testimony of Hughes was objected to on that account when taken, the testimony of the other three witnesses was not objected to. Although the second claim is invalid for want of novelty, the plaintiff can recover on the first claim under section 60 of the act of July 8, 1870 (16 *U. S. Stat. at Large,* 207 ; *now section* 4922 *of the Revised Statutes*), although no disclaimer has been made as yet as to the second claim, provided that, prior to the entry of a decree herein as to such first claim, they make a disclaimer under section 4917 of the Revised Statutes as to the second claim, it not appearing that there has been heretofore any unreasonable neglect or delay to enter such disclaimer; but as such disclaimer was not entered before the commencement of this suit, the plaintiffs will not be entitled to recover any costs of this suit (*Rev. Stat.* [ *U. S.*], *sec.* 4922).

Let a decree be entered for an account of profits and damages, and for a perpetual injunction as to the first claim.