**SUNEX INTERNATIONAL, INC., Telesis Incorporated, a/k/a Telesis Corporation, Arcan, Inc., and Joseph O. Hawkins, Plaintiffs,**

v.

**The TRAVELERS INDEMNITY COMPANY OF ILLINOIS, Defendant.**

No. CIV.A. 6:00–1521–24.

United States District Court,
D. South Carolina,
Greenville Division.

Dec. 17, 2001.

Gregory J. English, Wyche, Burgess, Freeman & Parham, Greenville, SC, for plaintiffs.

John E. Johnston, James L. Rogers, Jr., Laurel Renee Blair, Leatherwood, Walker, Todd & Mann, Greenville, SC, William T. Corbet, Jr., and Laura A. Brady, Drinker, Biddle & Shanley, Florham Park, NJ, for defendant.

## ORDER

SEYMOUR, District Judge.

Plaintiffs Sunex International, Inc. (Sunex), Telesis Incorporated (Telesis), Arcan, Inc. (Arcan), and Joseph O. Hawkins (Hawkins) bring the instant case against Defendant The Travelers Indemnity Company of Illinois (Travelers) for claims resulting from its refusal to defend and indemnify Plaintiffs Arcan and Hawkins in an underlying patent infringement lawsuit. This matter is before the court on Travelers' motion for summary judgment and Plaintiffs' cross-motion for summary judg-

ment or, in the alternative, certification to state court.

## I. FACTS

On April 22, 1998 Troy Shockley (Shockley) and Excalibur Tool and Equipment Company (Excalibur) brought a patent infringement lawsuit against Plaintiffs Arcan and Hawkins in the United States District Court for the District of South Carolina, Greenville Division. Shockley's amended complaint alleged:

> Defendants have been and, upon information and belief, are still infringing United States Patent No. Re. 35,732 [the '732 reissue] by making, using, and/or selling transformable mechanic's creepers which embody the patented inventions of said United States patent, and will continue doing so unless enjoined by this court.

Shockley's Amended Complaint, ¶ 8. At trial, the jury awarded Excalibur infringement damages on 2,841 creeper sales by Telesis and on 11,403 creeper sales by Arcan. The jury found that Excalibur lost additional sales of 40,000 creepers to Sam's Wholesale Club (Sam's) for the 1998 Christmas season. The jury assessed against Arcan lost profit damages of $15 per creeper and future lost profit damages of $3,000,000 over the life of the '732 reissue patent. The jury also found that: 1) Arcan willfully infringed; 2) Arcan did not make an offer to sell 9,180 creepers to Sam's before the '732 reissue; and 3) Arcan did in fact offer to sell 1,506 creepers to Costco before the '732 reissue. The district court issued an order granting Arcan intervening rights for its sales to Costco and denying both absolute and equitable intervening rights for its sales to Sam's. The district court awarded Excalibur a total of $3,791,070 in damages. *See Shockley v. Arcan*, 248 F.3d 1349, 1357 (Fed.Cir.2001)(discussing facts).

Hawkins and Arcan appealed the denial of intervening rights for Arcan's sales to Sam's, the damages award, and the ruling on Shockley's partial summary judgment motion that the '732 reissue patent was valid. *See id.* The Court of Appeals for the Federal Circuit vacated the district court's judgment awarding damages to Shockley and Excalibur, remitted the damages award to $791,070.00 and remanded to the district court to offer Shockley and Excalibur a choice between the remitted damage award or a new damages trial in the alternative. *Id.* at 1365. Shockley and Excalibur elected to accept the remitted damages over a new trial. Plaintiff's Memorandum, p. 5. On August 3, 2001, the district court entered a third amended judgment against Telesis and Arcan, jointly and severally, for $1,116,026.00 with interest thereon at the rate of 3.59% and costs.

During the aforementioned case, Plaintiffs requested that their insurance carrier, Travelers, assume the defense of the case and acknowledge coverage under the general liability policies and umbrella policies Plaintiffs purchased from Travelers. Complaint, ¶ 16. Travelers refused to do so on the grounds that the case did not qualify as an "advertising injury" within the meaning of the policies. *Id.* at ¶ 17. Plaintiffs filed their complaint against Travelers on April 3, 2000 in state court alleging breach of contract and bad faith on the part of Travelers. Travelers removed the action to this court. Travelers filed the herein motion for summary judgment on August 20, 2001. Plaintiffs filed a response and cross motion for summary judgment on September 19, 2001. Travelers argues that the language of the policies clearly does not provide coverage for patent infringement. Plaintiffs argue that the clauses of the policies that address advertising injuries are ambiguous and should be interpreted broadly so as to include patent infringement. Plaintiffs' motion for summary judgment essentially responds to Travelers' arguments and argues alternatively that the coverage issue should be certified to state court.

## II.  *DISCUSSION*

### A.  Summary Judgment Standard

Summary judgment "shall be rendered forthwith when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c).

The court's duty in deciding a motion for summary judgment "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment must demonstrate a lack of sufficient evidence while the non-moving party must set forth "specific facts showing that there is a genuine issue of material fact for trial." Fed. R. Civ. Proc. 56(e).

An issue of fact is "material" only if establishment of the fact might affect the outcome of the lawsuit under the governing substantive law. *See id.* Production of a "mere scintilla of evidence" in support of an essential element will not prevent the court from granting a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505. The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

## B. Interpretation of Insurance Policies

The parties disagree as to whether the portions of the policies that address "advertising injuries" should be interpreted to include coverage for the underlying patent infringement suit. Travelers argues that the plain language of the policies does not provide coverage for patent infringement. Plaintiffs argue that the portions of the policies which discuss "advertising injuries" are ambiguous and should be construed in favor of Plaintiffs.

■ Under South Carolina law, insurance policies are subject to the general rules of contract construction. *Nationwide Mut. Ins. Co. v. Commercial Bank,* 325 S.C. 357, 479 S.E.2d 524, 526 (1996)(citing *Standard Fire Ins. Co. v. Marine Contracting & Towing Co.,* 301 S.C. 418, 392 S.E.2d 460 (1990)). A court must give policy language its plain, ordinary, and popular meaning. *Diamond State Ins. Co. v. Homestead Indus. Inc.,* 318 S.C. 231, 456 S.E.2d 912, 915 (1995). An insurer's obligation under a policy of insurance is defined by the terms of the policy and cannot be enlarged by judicial construction. *See South Carolina Ins. Co. v. White,* 301 S.C. 133, 390 S.E.2d 471, 474 (1990). However, where present, ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer. *Diamond State Ins. Co.,* 456 S.E.2d at 915. The extent to which courts construe the language of an insurance policy differently is evidence of ambiguity. *See Greenville County v. Insurance Reserve Fund,* 313 S.C. 546, 443 S.E.2d 552, 553 (1994). Courts may look to a dictionary to determine the meaning of ambiguous, undefined terms. *See id.* Nevertheless, if the intention of the parties is clear, the court has no authority to torture the meaning of policy language or to extend or defeat coverage that was never intended by the parties. *Diamond State Ins. Co.,* 456 S.E.2d at 915.

■ Where a motion for summary judgment presents a question concerning the construction of a written contract, the question is one of law if the language employed by the contract is plain and unambiguous. *Moss v. Porter Bros., Inc.,* 292 S.C. 444, 357 S.E.2d 25, 27 (1987)(citing *First–Citizens Bank & Trust Co. v. Conway Nat'l Bank,* 282 S.C. 303, 317 S.E.2d 776 (1984)). Summary judgment is proper in such a case where the intention of the parties regarding the legal effect of the contract may be gathered from its four corners. *Id.*

■ The burden of proof is on the insured to show that a claim falls within the coverage of an insurance contract. *Gamble v. Travelers Ins. Co.,* 160 S.E.2d 523, 525 (S.C.1968). The insurer bears the burden of establishing exclusions to coverage. *Boggs v. Aetna Cas. & Sur. Co.,* 272 S.C. 460, 252 S.E.2d 565, 568 (1979).

■ The coverage sections of the general liability policies state the following:

### COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement.**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in

LIMITS OF INSURANCE (SECTION III);

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B.

**b.** This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

General Liability Policies, CG 00 01 10 93. The policies define "advertising injury" as follows:

"Advertising Injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business;

d. Infringement of copyright, title or slogan.

General Liability Policies at CG 11 01 10, Section V, No.1.

By the policies' plain terms, there is no "advertising injury" unless one of the four specified offenses occurs. Plaintiffs' claim is one for patent infringement. Patent infringement is not an offense listed in the policies. Therefore, Plaintiffs do not have an "advertising injury." *See St. Paul Fire and Marine Ins. Co. v. Advanced Interventional Sys.*, 824 F.Supp. 583, 585 (E.D.Va.1993), *aff'd*, 21 F.3d 424 (4th Cir.1994)(affirming reasoning of lower court regarding policy interpretation).

Plaintiffs seek to avoid this result by arguing that three phrases in the policies are ambiguous: 1) "in the course of advertising" as stated in the coverage section of the policies; 2) subsection (c) of the policies' definition of "advertising injury," which states "[m]isappropriation of advertising ideas or style of doing business," and; 3) subsection (d) of the policies' definition of "advertising injury," which states "[i]nfringement of copyright, title or slogan."

Plaintiffs first argue that "in the course of advertising" is ambiguous language that should be interpreted to include Plaintiffs' "offer to sell" patent infringement.[1] Plaintiffs base this argument on the fact that other courts have interpreted similar insurance policy language to include offers to sell. However, even assuming that "in the course of advertising" was interpreted to include Plaintiffs' offer to sell the infringing mechanical creepers, the use of quotation marks in this section of the poli-

---

**1.** Section 271 of the Patent Act was amended in 1994 and the amendment took effect January 1, 1996. The amended Section 271 states, "[W]hoever without authority makes, uses, *offers to sell*, or sells any patented invention within the United States ... during the time for the patent, therefore, infringes the patent." 35 U.S.C. 271 (emphasis added).

cy clearly conveys that the insurance covers only those advertising injuries included in the policies' definition of "advertising injuries." Thus, to continue its analysis, the court must turn to the policies' definition of advertising injuries.

Plaintiffs argue that subsection (c), which states that advertising injuries include "misappropriation of advertising ideas or style of doing business," is ambiguous and should be interpreted in favor of Plaintiffs to include their "offer to sell" patent infringement. In support of their position, Plaintiffs cite *Everett Assocs. v. Transcontinental Ins. Co.*, in which the court interpreted identical policy language and, in denying Defendant's motion for summary judgment, found that there was the *possibility* that "offer to sell" patent infringement constituted an advertising injury. *Everett Assocs. v. Transcontinental Ins. Co.*, 57 F.Supp.2d 874, 880 (N.D.Cal. 1999). Because the court determined there was a possibility that the patent infringement could qualify as an advertising injury, the defendant's motion for summary judgment was denied on that issue. *See id.* However, the *Everett* court, considering the third round of summary judgment motions in the same case two years later, explained that in light of recent case law, the underlying settlement, even if wholly comprised of damages for "offer to sell" patent infringement, was not an "advertising injury" covered under the policies' indemnification clauses. *See Everett Assocs. v. Transcontinental Ins. Co.*, 159 F.Supp.2d 1196, 1208 (N.D.Cal.2001). The court explained that it was required to follow the holding of the California case *Maxconn Inc. v. Truck Ins. Exchange*, in which the insurer refused to defend the insured against allegations that the insured had infringed upon a patent by offering to sell an infringing product. *See Maxconn Inc. v. Truck Ins. Exchange*, 74 Cal.App.4th 1267, 88 Cal.Rptr.2d 750

(1999). The policies in the *Maxconn* case used a similar definition of advertising injuries that included misappropriation and infringement of title. *See id.* at 752.

Since the 1994 Amendments to Section 271 of the Patent Act, several other courts also have found that advertising injuries do not include "offer to sell" patent infringement. *See, e.g., United National v. SST Fitness*, 182 F.3d 447 (6th Cir.1999)(finding no duty to defend where complaint alleged SST advertised an infringing product on grounds that policy did not provide coverage for patent infringement); *Miller, Inc. v. Travelers Indem. Co.*, 162 F.3d 454 (6th Cir.1998)(finding patent infringement arising from promotional material did not constitute an "advertising injury" on the grounds that if the insurer had intended to cover patent infringement, it would have included it in the policy language expressly); *Heritage Mut. Ins. Co. v. Advanced Polymer Tech., Inc.*, 97 F.Supp.2d 913 (S.D.Ind.2000)(finding that the advertising of an alleged infringing product is not "misappropriation"); *Tradesoft Technologies, Inc. v. The Franklin Mut. Ins. Co.*, 329 N.J.Super. 137, 746 A.2d 1078 (2000); *ABB Flakt, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA.*, 731 A.2d 811 (1999); *FileNet Corp. v. Chubb Corp.*, 324 N.J.Super. 476, 735 A.2d 1203 (1997).

On December 11, 2001, Travelers brought to the court's attention a recent decision by the Court of Appeals for the First Circuit, which addresses identical policy language and which Travelers contends supports its position. *See Ekco Group, Inc. v. Travelers Indemnity Co.*, 273 F.3d 409 (1st Cir.2001). Plaintiffs, on the other hand, argue that the *Ekco* decision supports their position that the policies' language is ambiguous. The court disagrees. In *Ekco*, the plaintiff incurred settlement and defense expenses in resolv-

ing claims against it for trade dress infringement, unfair competition, and design patent infringement, and sought reimbursement for these expenses under its policy with its insurer. *Id.* at 411–12. The district court held that the trade dress infringement and unfair competition claims fell within the policy coverage for advertising injuries. *Id.* at 412–13. The First Circuit Court of Appeals reversed the district court, finding that "[c]overage on the present facts requires that one stretch the term 'advertising' in a way that has no natural stopping point short of absurdity." *Id.* at 412–13. The court further reasoned that, "surely no one imagines that a policy covering 'advertising injury' was intended to provide coverage for ordinary patent violations." *Id.* at p. 412–13.

Plaintiffs emphasized at oral argument that under South Carolina law, where two reasonable definitions are possible, the interpretation most beneficial to the insured must be used. However, other than the 1999 *Everett* opinion that was abrogated by the 2001 *Everett* opinion, no other courts have interpreted advertising injuries to include "offer to sell" patent infringement. Plaintiffs' contention is without merit.

Plaintiffs next argue that the phrase "misappropriation of advertising ideas and style of doing business" is ambiguous and should be interpreted to include patent infringement offenses because other courts have determined that "misappropriation of advertising ideas and style of doing business" included trademark infringement offenses by the insured. *See American Employers' Ins. Co. v. DeLorme Publ'g Co.*, 39 F.Supp.2d 64, 77 (D.Me.1999); *Union Ins. Co. v. The Knife Co.*, 897 F.Supp. 1213, 1216 (W.D.Ark.1995). The court disagrees with Plaintiffs' argument for two reasons. First, there is a fundamental difference between trademarks and patents. The

Lanham Trade–Mark Act gives a seller or producer the exclusive right to "register a trademark and to prevent his or her competitors from using that trademark." *Qualitex v. Jacobson Products Co.*, 514 U.S. 159, 162, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995)(internal citation omitted). Patents, however, are granted to inventors of new and useful inventions. *See Pfaff v. Wells Elec., Inc.*, 525 U.S. 55, 63, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998)(quoting *Seymour v. Osborne*, 11 Wall. 516, 533, 20 L.Ed. 33 (1870)). Patents provide inventors with the exclusive right to make, use, and vend to others their inventions for a limited term. *See id.* Awarding such exclusive rights promotes the progress of science and the useful arts, and serves as a reward for the inventor for the labor and expense incurred in creating an invention. *See id.* at 533–34.

Because trademark and patent protection each have a distinct purpose, the fact that courts have interpreted "misappropriation of an advertising idea or style of doing business" to be ambiguous in respect to whether it includes trademark infringement is not conclusive that such language should be construed to include patent infringement. Further, the plain meaning of "advertising ideas and style of doing business" must be strained beyond its plain, ordinary meaning in order to include patent infringement. *See USAA Property and Cas. Ins. Co. v. Rowland*, 312 S.C. 536, 435 S.E.2d 879, 881–82 (1993)(explaining that in the absence of a prescribed definition in an insurance policy term, the term should be defined according to the ordinary and usual understanding of the term's significance to the ordinary person).

Plaintiffs also argue that subsection (d), "infringement of title," is ambiguous. Plaintiffs seek to have the court apply a dictionary definition of "title" that includes formal rights in ownership of property.

Plaintiffs use this definition, and the fact that patent rights are a form of property rights, to argue that patent infringement should be considered "infringement of title."

The court disagrees. South Carolina law permits the court to consult a dictionary in interpreting contract terms. *Greenville County v. Ins. Reserve Fund,* 443, S.E.2d 552, 553 (S.C.1994). However, a court looks to a dictionary only where the terms are deemed to be ambiguous. In this case, the plain terms of the policies and the context in which they are used demonstrate that the use of the term "title" clearly is meant as the title of a work or as a name, not a formal property right. The court finds that Plaintiffs' argument, which would have the court construe "title" to mean the formal property right Shockley held to the patent, "tortures" the meaning of the words beyond the intent of the parties. *See Torrington Co. v. Aetna Cas. and Sur. Co.,* 264 S.C. 636, 216 S.E.2d 547, 550 (1975)("it is not the function of the court to rewrite or torture the meaning of a policy to extend coverage never intended by the parties").

In its motion for summary judgment, Travelers argues that because patent infringement is not included in the plain language of the policies, the policies do not afford coverage for the underlying action. After examining the language of the policies and case law addressing the issue, the court is in agreement with Travelers. The advertising injury definition in the policies consists of distinct categories of actionable conduct. A claim for patent infringement is also a distinct legal claim governed by a large body of statutory and case law. Yet, there is no mention of patent infringement in the policies. Moreover, a patent infringement offense, even one for "offering to sell," occurs because the patent of a product an infringing seller offers to sell is held by another person who has not granted patent rights to the infringing seller, not because the *manner* or *method* in which it was advertised infringes a patent. The policies clearly provide coverage for offenses that arise because of a certain wrongdoing in the content of advertising, but not for damages attributable to the product itself. Thus, even with broad interpretation of the terms that Plaintiffs claim are ambiguous, the absence of any express reference to patent infringement in the policies leads to the conclusion that the parties did not intend for patent infringement to be covered.

For the reasons stated above, the court finds that the policies' language is not ambiguous. Therefore, Defendant's motion for summary judgment is **granted**. Plaintiffs' motion for summary judgment is **denied**.

## C. Certification to State Court

Plaintiffs argue in the alternative that the issue whether the policy confers coverage should be certified to the South Carolina Supreme Court. "There is no need for certification where the answer to the question sought to be certified is reasonably clear." *Simpson v. Duke Energy Corp.,* 191 F.3d 448 (4th Cir.1999)(unpublished decision). Only if the available state law is clearly insufficient should the court certify the issue to state court. *Roe v. Doe,* 28 F.3d 404, 407 (4th Cir.1994). Even [w]here there is no case law from the forum state which is directly on point, the district court [must] attempt to do as the state court would do if confronted with the same fact pattern. *Id.* South Carolina case law on the interpretation of insurance policies is sufficient to guide this court in its decision, and the court has attempted to do as the state court would do if presented with the same facts. Therefore, Plaintiffs'

motion for certification is **denied**, and the case is dismissed.